**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**


**CECIL HARRISON**                                                              **PLAINTIFF**


**V.**                                                  **CIVIL ACTION NO. 3:09-CV-106 -SA-JAD**


**YALOBUSHA COUNTY,** *et al.*                                                  **DEFENDANTS**


### MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment [38].  After reviewing the motions, responses, rules, and authorities, the Court finds as follows:

### I. BACKGROUND

In 1998, Plaintiff Cecil Harrison was offered employment with the Yalobusha County Board of Supervisors.  Plaintiff accepted a position as the Director of Civil Defense (also referred to as the Emergency Management Director).  After working for Yalobusha County for nine years, Plaintiff applied for a license from the State of Mississippi and Yalobusha County to open a restaurant, which would also serve alcohol, as a part-time job. Plaintiff applied for this license after Yalobusha County voted to legalize the sale of beer and light wine in December of 2007.  On February 25, 2008, Yalobusha County issued Plaintiff a Permit to Sell Light Wine and Beer, and the permit was renewed on September 2, 2008.

Plaintiff opened his restaurant, Pit Row Grill, on March 1, 2008.  Plaintiff alleges that the Yalobusha County Sheriff's Department, and in particular Sheriff Lance Humphreys, targeted his establishment due to the fact that he was serving alcohol.  Plaintiff claims that the Sheriff's

Department intentionally set up roadblocks near Pit Row Grill and also conducted "walk-throughs" to take note of who was inside the restaurant. Plaintiff alleges that the Sheriff's Department did not engage in such activities at other restaurants. Plaintiff further claims that the Sheriff's Department charged him with facilitating illegal gambling at Pit Row Grill without probable cause. Plaintiff asserts that this charge was instituted against him as a form of harassment based on his opening of an establishment that served alcohol.

In June of 2009, the Yalobusha County Board of Supervisors, including Defendant Amos Sims, terminated Plaintiff from his employment with Yalobusha County. In terminating Plaintiff, the Board of Supervisors listed the following reasons: (1) problems concerning MEMA and FEMA certifications and attendance; (2) problems concerning Yalobusha County reimbursement paperwork; (3) problems regarding Homeland Security reimbursement for a pontoon boat; (4) problems keeping track of Yalobusha County inventory; (5) attitude problems; (6) complaints from constituents; (7) not attending Homeland Security meetings; (8) failure to attend Borg-Warner disaster plan meeting; and (8) the illegal gambling operation. Further, the Board generally claimed that Plaintiff was terminated for failure to adequately do his job.

Plaintiff claims that his termination was in retaliation based on his support for the legalization of the sale of alcohol in Yalobusha County and for his operating a restaurant that serves alcohol. Plaintiff claims that the actions taken by the Board of Supervisors as well as by the Sheriff's Department are in violation of his First Amendment rights of free speech and association.

On September 29, 2009, Plaintiff filed this federal lawsuit against Yalobusha County, Yalobusha County Board of Supervisors, Yalobusha County Sheriff's Department, and Amos Sims, the President of the Yalobusha County Board of Supervisors, and Lance Humphrey, the

Yalobusha County Sheriff, in their individual and personal capacities alleging: (1) retaliation for exercising his First Amendment rights under 42 U.S.C. Section 1983; (2) a violation of his First Amendment rights of Free Speech and Assembly under 42 U.S.C. Section 1983; (3) failure to train under 42 U.S.C. Section 1983; (4) conspiracy to violate his First Amendment rights under 42 U.S.C. Section 1985(3); (5) malicious prosecution; and (6) abuse of process. Defendants filed its Motion for Summary Judgment on July 22, 2010, arguing they are entitled to judgment as a matter of law as to all counts.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."

Little, 37 F.3d at 1075. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075.

### III. ANALYSIS AND DISCUSSION

According to the Complaint, Plaintiff brings claims involving the municipal liability of Yalobusha County as well as suits against Amos Sims and Lance Humphreys in their official and individual capacities. Before turning to Plaintiff's claims involving Sims and Humphreys's individual liability or Plaintiff's supplemental state law claims, the Court will first analyze Plaintiff's municipal liability and official capacity claims brought under federal law.

***Municipal Liability and Official Capacity Claims***

Municipal liability results if the deprivation of constitutionally protected rights was inflicted pursuant to an official policy or custom. McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 313 (5th Cir. 2002). Municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell v. Dep't of Soc. Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. Peters v. City of Biloxi, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999); see Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998); Piotrowski, 237 F.3d at 580 (stating that these two requirements "must not be diluted."). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." Monell, 436 U.S. at 691, 98 S. Ct. 2018. However, the Fifth Circuit has noted that "even 'a single decision may create municipal liability *if* that decision were made by a final

4

policymaker responsible for that activity.'" Brooks v. George Cnty, Miss., 85 F.3d 157, 165 (5th Cir. 1996) (quoting Brown v. Bryan Cnty., Oklahoma, 67 F.3d 1174, 1183 (5th Cir. 1995) (emphasis in original)).

Official capacity claims, like the ones asserted in this action, are typically treated as claims against the entity itself. In West v. Atkins, the United States Supreme Court stated that "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." 487 U.S. 42, 50, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). In Kentucky v. Graham, the Supreme Court explained the difference between individual capacity claims and official capacity claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against that entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (internal citations omitted). Therefore, a suit against a governmental employee in their official capacity is "no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Thus, if suit cannot be maintained under Section 1983 against Yalobusha County, then the suit can also not be maintained against Defendants Sims and Humphreys in their official capacities.

<u>A.</u>    <u>First Amendment Retaliation under Section 1983</u>

Plaintiff alleges that he was targeted by law enforcement and eventually terminated from his employment due to the exercise of his First Amendment rights.  In particular, Plaintiff asserts that Defendants violated his freedom of speech and freedom of association.[1]

*(i)    Freedom of Speech*

Plaintiff's allegations arise from his alleged "publically known position favoring the sale of alcohol in Yalobusha County" and "his owning and operating an eating establishment that served alcohol."   An at-will public employee may not be discharged for exercising his First Amendment right to freedom of expression. <u>Thompson v. City of Starkville</u>, 901 F.2d 456, 460 (5th Cir. 1990). To prevail on a First Amendment retaliation claim, a plaintiff must show:

> (1) they suffered an adverse employment decision, (2) their speech involved a matter of public concern, (3) their interest in commenting on matters of public concern outweighs [their] employer's interest in promoting efficiency, and (4) their speech motivated the adverse employment decision.

<u>Blackwell v. Laque</u>, 275 F. App'x 363, 368-69 (5th Cir. 2008) (citing <u>Stotter v. Univ. of Tex. at San Antonio</u>, 508 F.3d 812, 825 (5th Cir. 2007)).

1. Plaintiff's Political Activities Favoring the Sale of Alcohol

Plaintiff's Complaint alleges that he was somehow involved in political activities regarding the sale of beer and light wine in Yalobusha County.  While there is no evidence of this and Plaintiff never actually states how he was involved, Plaintiff claims that before beer and light wine became legal in Yalobusha County, he supported the sale of such alcohol. Even accepting Plaintiff's assertion that he was involved politically as true, the Court skips ahead in

---

[1]  In Plaintiff's Complaint, Plaintiff interchangeably uses the terms freedom of association and freedom of assembly.  While Plaintiff's claim appears to be argued as a freedom of association claim, the Court reviews both doctrines.

our inquiry to the fourth element of Plaintiff's retaliation claim, the causation issue. Plaintiff submitted no evidence that the Yalobusha County Board of Supervisors, those that terminated him, were made aware of his alleged political involvement. In fact, Plaintiff concedes in his deposition testimony that they were not aware of his view on the sale of alcohol. Plaintiff explicitly states that the Board of Supervisors "didn't know I was either yay or nay for [the sale of alcohol] until I applied for my permit." Further, Board member Tommy Vaughn testified that he was not aware that Plaintiff was involved in any political activities.

In Cabrol v. Town of Youngsville, the Fifth Circuit addressed a situation similar to the present case. 106 F.3d 101 (5th Cir. 1997). In Cabrol, the plaintiff claimed that his job was terminated due to conversations he had with city council members and residents expressing his opposition to an amendment regarding the raising of chickens. Id. at 108. The Fifth Circuit rejected Cabrol's retaliation claim, finding that he "submitted no evidence regarding how the mayor, the person who terminated him, was made aware of these conversations." Id; see also Fowler v. Smith, 68 F.3d 124, 127 (5th Cir. 1995) (no genuine issue of material fact raised concerning motivation behind discharge where no evidence that defendant knew of plaintiff's speech).

Since Plaintiff not only failed to proffer evidence that the Board knew of his political activities, but he also admitted that the Board members had no such knowledge, Plaintiff's First Amendment retaliation claim regarding his alleged political involvement fails. When the nonmovant fails to make a sufficient showing on an essential element of his claim, the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. 2548.

2.  Plaintiff's Owning and Operating an Establishment Serving Alcohol

Plaintiff also advances a First Amendment claim based on retaliation for a type of symbolic speech, citing specifically to the owning and operating of his restaurant where he served alcohol.  Before the Court can reach Plaintiff's retaliation claim, it must first resolve the issue as to whether or not Plaintiff's expressive conduct constitutes "speech" in order to warrant protection by the First Amendment.  The question of the protected status of speech is one of law. Stewart v. Parish of Jefferson, 951 F.2d 681, 683 (5th Cir. 1992); Kirkland v. Northside I.S.D., 890 F.2d 794, 797 (5th Cir. 1989), *cert. denied*, 496 U.S. 926, 110 S. Ct. 2620, 110 L. Ed. 2d 641 (1990).

In considering Plaintiff's conduct, the Court bears in mind the Supreme Court's rejection in United States v. O'Brien, 391 U.S. 367, 376, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), of "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in conduct intends thereby to express an idea."  See also City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989) (finding it "possible to find kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment"); New Orleans S.S. Ass'n v. Gen. Longshore Workers, 626 F.2d 455, 462 n.5 (5th Cir. 1980) (noting that all communication involves conduct), *aff'd sub nom.* Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n, 457 U.S. 702, 102 S. Ct. 2672, 73 L. Ed. 2d 327 (1982).

Mere conduct is not generally considered speech, and thus, is not in itself protected under the First Amendment.  It is, however, possible for certain conduct to be "sufficiently imbued with elements of communication" so as to merit constitutional protection. Spence v. Washington, 418 U.S. 405, 409, 94 S. Ct. 2205, 41 L. Ed. 2d 842 (1977); see also Virginia v. Black, 538 U.S.

343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); Arcara v. Cloud Books, Inc., 478 U.S. 697, 708, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986) (stating that the First Amendment is not implicated when "government is regulating neither speech nor an incidental, nonexpressive effect of speech") (O'Conner, J., concurring).

Thus, conduct that has been found to be sufficiently expressive to merit First Amendment protection has included marching in a parade, see Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995); burning the United States flag, see United States v. Eichman, 496 U.S. 310, 110 S. Ct. 2404, 110 L. Ed. 2d 287 (1990); marching in uniforms bearing the swastika, see Nat'l Socialist Party of Am. v. Skokie, 432 U.S. 43, 97 S. Ct. 2205, 53 L. Ed. 2d 96 (1977); defacing and displaying the United States flag upside down and with a peace symbol affixed thereto, see Spence, 418 U.S. 405, 94 S. Ct. 2727; wearing a jacket with an expletive regarding the military draft, see Cohen v. California, 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971); wearing an armband to protest a war, see Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); and saluting or refusing to salute the flag, see West Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S. Ct. 1178, 87 L.Ed. 1628 (1943).

In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, the relevant inquiry is whether intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it. Texas v. Johnson, 491 U.S. 397, 404, 109 S. Ct. 2533, 2539, 105 L. Ed. 2d 342 (1989). In considering such, the Court looks to Plaintiff's activity, combined with the factual context and environment in which it was undertaken. Spence, 418 U.S. at 409-10, 94 S. Ct. 2727.

9

In this particular case, the nature of Plaintiff's activities does not amount to an expressive act for purposes of the First Amendment. Cf. Buckley v. Valeo, 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976); Spence, 418 U.S. 405, 94 S. Ct. 2727; Tinker, 393 U.S. 5, 89 S. Ct. 733. In analyzing the cases in which courts have found expressive conduct to fall within protection of the First Amendment, such courts have done so because "the expressive component was the primary, if not the sole, purpose of the act." NYC C.L.A.S.H., Inc. v. City of New York, 315 F. Supp. 2d 416, 478 (S.D.N.Y. 2004). Here, the Court is not persuaded by the general proposition that an owner's prevailing motivation behind operating a restaurant that serves alcohol is to convey a message with some profound expressive content to those around him that he politically supports the idea that the sale of alcohol should be legal. If such were the case, every restaurant, bar, grocery store, and gas station owner could claim First Amendment protection merely by selling alcohol. An analogous example to supporting the sale of alcohol is supporting smoking in public places. Lighting a cigarette, even in the face of a smoking ban, is not considered speech protected by the First Amendment. See Roark & Hardee L.P. v. City of Austin, 522 F.3d 533, 551 (5th Cir. 2008); Rohde v. City of Austin, 124 F. App'x 246, 247 (5th Cir. 2005) (per curiam); NYC C.L.A.S.H., 315 F. Supp. 2d. at 476.

Plaintiff claims that the particular context and environment in which he was operating his establishment triggers First Amendment protection. While factual context and the surrounding environment are certainly a part of this Court's analysis, they do not support Plaintiff's contentions in this case. When Plaintiff was questioned regarding the opening of his restaurant, he never once mentioned that he opened it in order to express some element of free speech. Rather, he noted that he opened it because it gave him "another part-time position, if you will, as far as like income" and that his now ex-wife was "wanting to do something" and the restaurant

would "give[] her somewhere where she could do it during the day or, you know, at night and be home during the day."  This does not illustrate any intent to convey a message regarding Plaintiff's position on alcohol.  See Johnson, 397 U.S. at 404-05, 109 S. Ct. 2533.  The fact that Plaintiff served alcohol at his restaurant and *now* claims such was actually symbolic speech is insufficient.

Along the same lines, the Court is not persuaded that the surrounding environment in Yalobusha County created a great likelihood that any message conveyed would be understood by those who viewed it.[2]  Plaintiff claims that the sale of alcohol was "hotly contested."  While there is no evidence of this anywhere in the record, Plaintiff did not begin selling beer and light wine until *after* it became legal – *after* any debate that may have existed was over.  Further, Plaintiff was not blazing an unbeaten path of selling beer and light wine.  There were other establishments in the relative geographical area also serving alcohol.

Plaintiff, again attempting to ignite First Amendment protection, states that Defendants admit that people filed drinking complaints about Plaintiff's restaurant.  While this is true, such complaints were not filed about Plaintiff's serving of alcohol generally.  The complaints that Defendants referred to were about Plaintiff's restaurant allowing underage drinking and illegal gambling.  Such conduct is not protected by the First Amendment or expressive conduct.

The Court finds no evidence that Plaintiff had an actual intent to convey a particular message or that there was a likelihood any such message was understood by those who viewed

---

[2] Plaintiff also claims that Defendants were put on notice of the message Plaintiff was conveying when he sought a permit to sell beer and light wine.  While Defendants may have been on notice Plaintiff wished to serve alcohol, there is no evidence they understood some profound expressive meaning associated with such.  Further, the very same Board of Supervisors that Plaintiff claims retaliated again him for selling alcohol is the very same Board that unanimously approved his permit to sell beer and light wine in the first place.

the sale of alcohol inside Plaintiff's restaurant.  As such, the Court finds that Plaintiff's conduct in this case does not fall within the First Amendment's realm of protected speech.  Therefore, the Court need not consider the other elements of Plaintiff's First Amendment retaliation claim, and all Defendants are entitled to summary judgment.

*(ii)     Freedom of Association*

Plaintiff also claims that Defendants retaliated against him based on his rights of freedom of assembly and/or association.  Specifically, Plaintiff claims that he and the patrons of his establishment were "supporting the recently passed alcohol initiative . . . [by] selling and drinking alcohol."  The Court finds such actions in this case to likewise warrant no First Amendment protection.

The United States Supreme Court has explained that the right to associate protected by the First Amendment is implicated in two general instances. First, government intrusion into a person's choice to "enter into and maintain certain intimate human relationships" may violate the right of freedom of association. <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 617-19, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984) (citing cases). Second, the right to associate freely is implicated when governmental action interferes with an organization engaged in activities protected by the First Amendment, such as speech, assembly, redress of grievances, and the exercise of religion. <u>See id</u>. at 618, 104 S. Ct. 3244.  Thus, in order for Plaintiff to succeed in its challenge on the basis of freedom of association, it must demonstrate that Defendants' actions infringed one of these two general spheres of activities.

Plaintiff does not appear to suggest that the gathering of individuals in bars and restaurants is the type of "intimate" relationship that the Supreme Court contemplated in <u>Roberts</u>. <u>Cf</u>. <u>City of Dallas v. Stanglin</u>, 490 U.S. 19, 24, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989) ("It is

12

clear beyond cavil that dance-hall patrons, who may number 1,000 on any given night, are not

engaged in . . . 'intimate human relationships' . . . ."). Thus, if Plaintiff's claim on associational

grounds can succeed, it must be grounded in an alleged inference that Defendants' actions

hindered his ability to assemble and associate with other persons while exercising their First

Amendment rights.

At the outset, the Court notes that Plaintiff is not entirely clear in identifying the

fundamental right that Defendants' actions allegedly affect. It is unclear whether Plaintiff

alleges a general "right to drink and sell alcohol" or a general right to associate and speak while

engaging in such activities. However, the Court finds that Plaintiff's actions of drinking and

selling alcohol in this case do not infringe upon any recognized First Amendment right,

irrespective of the exact manner in which Plaintiff meant to frame the issue.

The Court does not dismiss the idea that drinking and selling alcohol may have contained

some scintilla of associational value for Plaintiff and the patrons of his restaurant. However,

drinking and selling alcohol is not a prerequisite to the exercise of association under the First

Amendment. As the court noted in NYC C.L.A.S.H., such social activities like drinking and

smoking "[are] but a single component of the entire realm of associational interactions that a bar

or restaurant patron could experience." 315 F. Supp. 2d at 473. Moreover, there is no

"generalized right of social association" under the First Amendment. Stanglin, 490 U.S. at 25,

109 S. Ct. 1591. There is no evidence in this case that Plaintiff and his patrons were doing

anything other than drinking and socializing at a bar. There is no suggestion that Plaintiff or his

patrons "[took] positions on public questions or perform[ed] other similar activities." Id.

(quoting Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 548, 107 S. Ct.

1940, 95 L. Ed. 2d 474 (1987)). Therefore, the Court finds no evidence that any of Defendants'

actions encumbered a cognizable First Amendment right. See Lyng v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., 485 U.S. 360, 366-67 & n. 5, 108 S. Ct. 1184, 99 L. Ed. 2d 380 (1988) (noting that to be cognizable, the interference with associational rights must be "direct and substantial" or "significant.").

Since the Court finds that Plaintiff failed to prove that he was exercising any First Amendment rights or that Defendants hindered such rights, the Court declines to consider the other elements of Plaintiff's retaliation claim. Thus, all Defendants are entitled to summary judgment for Plaintiff's retaliation claim based on freedom of association.

B.    First Amendment Violations of Free Speech and Assembly under Section 1983

Plaintiff also brings a claim generally stating that his freedoms of speech and association were violated. Plaintiff asserts no new First Amendment rights under this cause of action, other than the ones in which this Court already dismissed above. Therefore, summary judgment is appropriate for Plaintiff's First Amendment Freedom of Speech and Freedom of Assembly/Association claims.

C.    Failure to Train under Section 1983

Plaintiff claims that Defendants failed to adequately train and supervise law enforcement officers to prevent them from "retaliating against citizens exercising their constitutional rights."[3] Plaintiff additionally asserts that there was "a pattern of targeting Plaintiff for his free speech activities." An allegation of inadequate training may result in municipal liability when "the need

_____

[3] Plaintiff generally complains that Defendants failed to give him an adequate job description while he was employed by Yalobusha County, thus causing him to not know his official duties. To any extent Plaintiff asserts this complaint in support of his failure to train cause of action, the Court finds that Plaintiff conceded this allegation in his deposition testimony. Plaintiff stated that he "understood [his] position," that his job duties never changed, and that he "knew [his] job." Further, Plaintiff conceded that the roles and duties of his position are spelled out by statute – a statute Plaintiff admitted he had not ever read.

for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). However, an allegation that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." Id. at 390, 109 S. Ct. 1197. A single incident of inadequate training is insufficient to warrant a finding of deliberate indifference; rather, the plaintiff must show a pattern of similar violations to establish such a finding. Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 382-83 (5th Cir. 2005). The plaintiff must also prove the existence of a direct causal link between the inadequate training and the plaintiff's constitutional deprivation. Harris, 489 U.S. at 385-86, 109 S. Ct. 1197.

While the Court has already dismissed Plaintiff's free speech claim, even if Plaintiff was exercising some First Amendment right, the Court finds no evidence of inadequate training or any deliberate indifference on the part of Defendants. Plaintiff claims that various law enforcement officers targeted him and his establishment. The record is void of evidence upholding the validity of such allegations. In regards to the assertion that Sheriff Humphreys directed his officers to target Plaintiff, Plaintiff admitted, several times, in his deposition testimony that it was just his "speculation," "opinion," or "belief" that such actions were occurring.

Moreoever, Sheriff Humprehys and Mr. Camfield, an officer at the Yalobusha County Sheriff's Department, testified that the criteria for deciding the location of a roadblock was random, that no specific locations were ever mentioned in meetings, that if they did a "walk-through" in one bar, they did one in all bars, and that there were several complaints about unlawful activities occurring at Plaintiff's establishment.

Plaintiff has failed to identify any evidence that the Yalobusha County Sheriff Department policies are inadequate. Moreover, Plaintiff has failed to show any persistent widespread practice by Yalobusha County of inadequate training or supervision. Without some competent evidence demonstrating a failure by Yalobusha County, Sheriff Humphreys, or Board member Sims to adequately train or supervise law enforcement officers, Plaintiff's failure to train claim must fail and Defendants are entitled to summary judgment.

D.      Conspiracy under Section 1985(3)

Subsection three of Section 1985 prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," or to prevent another from voting or advocating in a federal election. 42 U.S.C. § 1985(3). Plaintiff contends that Defendants conspired to deter him from exercising his First Amendment rights regarding the owning and operating of his establishment that served alcohol.

To succeed on his Title 42 U.S.C. § 1985(3) claim, Plaintiff must prove the following: (1) a conspiracy between two or more people; (2) for the purpose of depriving a person or class of people of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States. See Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 757 (5th Cir. 1987); Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 270 (5th Cir. 2001); Earnest v. Lowentritt, 690 F.2d 1198, 1202 (5th Cir. 1982); Wong v. Stripling, 881 F.2d 200, 203-04 (5th Cir. 1989). In United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 837-39, 103 S. Ct. 3352, 3360-61, 77 L. Ed. 2d 1049 (1983), the Supreme Court held that § 1985(3) does not reach conspiracies motivated by economic or commercial animus. Section 1985(3) requires that there must be "some racial, or perhaps

otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1983); Daigle v. Gulf State Util. Co., 794 F.2d 974, 978 (5th Cir. 1986). Importantly for this case, the Fifth Circuit has noted that "[i]n this circuit, we require an allegation of a race-based conspiracy." Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000).

Plaintiff, a Caucasian male, never once alleges that he was the victim of a race-based conspiracy.[4] Plaintiff's conspiracy claim rests solely on his First Amendment allegation. While the Court has already dismissed Plaintiff's First Amendment claims, the Court also finds that Plaintiff's conspiracy claim fails nonetheless. As such, Defendants are entitled to summary judgment for Plaintiff's Section 1985(3) conspiracy claim.

### Individual Capacity Claims

Plaintiff also sues Amos Sims and Lance Humphreys in their individual capacities. In Hafer v. Melo, the Supreme Court unanimously held that state officials sued for damages in their personal capacities are "persons" within the meaning of § 1983, even when the claim is based upon the carrying out of official responsibilities. 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). However, officials sued under § 1983 in their personal capacities may be able to assert a qualified immunity defense.

---

[4] The Court agrees with Defendants that Plaintiff is incorrect in his assertion that the Supreme Court decisions of Griffin v. Breckenridge, 403 U.S. 88, 91 S. Ct. 1790 (1971) and United Bhd. v. Scott, 463 U.S. 825, 103 S. Ct. 3352 (1983) established that civil conspiracies brought under Section 1983(5) are not limited to race-based animus. Plaintiff apparently misreads such cases. Griffin involved a race-based conspiracy, and the Court in United Bhd. held that the civil rights conspiracy statute was not intended to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities. Thus, Plaintiff's arguments based on these cases are to no avail.

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

Although qualified immunity is an affirmative defense, see Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980), once the defendant pleads qualified immunity, the burden shifts to the plaintiff to show that the right allegedly violated was clearly established at the time of the challenged conduct. See Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997) (where § 1983 defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, plaintiff has the burden to rebut qualified immunity defense by establishing the violation of clearly established law). For a right to be clearly established, "there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law." Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1079 (5th Cir. 1995). Indeed, "the determination whether a right is 'clearly established' is a more particularized inquiry" that focuses on whether a reasonable official would know that the specific act in question was unlawful. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Since the Court has already found that Plaintiff failed to make a sufficient showing to establish his First Amendment, failure to train, and civil conspiracy claims – thus finding that no constitutional rights have been violated – the Court's inquiry ends here, and the Defendants are entitled to qualified immunity. See Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001) ("[i]f the allegations do not establish the violation of a constitutional right, the officer is entitled to qualified immunity.").

*Plaintiff's Supplemental State Law Claims*

Plaintiff also asserts state law claims of malicious prosecution and abuse of process. At the outset, the Court notes that its grant of summary judgment on the above claims obviated all of Plaintiff's federal law claims. Although the Fifth Circuit has stated that the "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute. McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir. 1998) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)); see Carnegie-Mellon Univ. v Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). The Court possesses the discretion to retain jurisdiction of the remaining state law claims pursuant to 28 U.S.C. § 1367. See Smith v. Amedisys Inc., 298 F.3d 434, 446 (5th Cir. 2002).

While Section 1367(c) gives district courts the ability to decline jurisdiction, a court may retain jurisdiction over pendent state claims to further the interests of judicial economy, fairness, convenience, and comity. Amedisys, 298 F.3d at 447. In this case, Defendants have now responded to Plaintiff's various complaints as well as made the current summary judgment motion, and this Court has already spent considerable time studying the record. See Batiste v. Island Records, Inc., 179 F.3d 217, 228 (5th Cir. 1999) ("The familiarity of the district court with the merits of the . . . claims demonstrates that further proceedings in the district court would prevent redundancy and conserve scarce judicial resources . . . ."). Further, the remaining state law claims do not present novel or complex issues that would be better heard in state court, and retaining jurisdiction avoids unnecessary expense and delay. See Batiste, 179 F.3d at 227-28 (holding that the district court abused its discretion in declining to exercise supplemental jurisdiction over remaining state-law claims due to the absence of any difficult state-law issue in

the remaining claims and the district court's intimate familiarity with the claims . . . and the significant consideration by the district court of motions to . . . grant summary judgment); Newport Ltd. v. Sears, Roebuck and Co., 941 F.2d 302, 308 (5th Cir. 1991) (holding that the district court abused its discretion in remanding state-law claims because those claims "present[ed] no novel or especially unusual questions which [could] not be readily and routinely resolved by the court à quo."). Therefore, the Court retains jurisdiction over Plaintiff's state law claims.

A.      Malicious Prosecution

Plaintiff claims that Defendants maliciously "instituted and pursued" gambling charges against him. In regards to Plaintiff's malicious prosecution claim brought against Yalobusha County and Sheriff Humphreys and Board member Sims, in their official capacities, the Mississippi Tort Claims Act is implicated. See Porter v. Farris, 328 F. App'x 286, 288 (5th Cir. 2009) (noting that the plaintiff's "state law malicious prosecution claim . . . f[ell] under the Mississippi Tort Claims Act.").

Through the MTCA, Mississippi waived its immunity in a limited fashion for certain tort actions. Univ. of Miss. Med. Ctr. v. Robinson, 876 So. 2d 337, 339 (Miss. 2004). By definition, the MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability. MISS. CODE ANN. § 11-46-7(1); Elkins v. McKenzie, 865 So. 2d 1065, 1078 (Miss. 2003) (internal citations omitted); L.W. v. McComb Separate Mun. Sch. Dist., 754 So. 2d 1136, 1138 (Miss. 1999); Moore v. Carroll Cnty, Miss., 960 F. Supp. 1084, 1088 (N.D. Miss. 1997).

Defendants first contend that Plaintiff failed to provide pre-suit notice of his claims. The MTCA requires that notice of a claim be filed ninety days prior to instituting a civil action

thereon. MISS. CODE ANN. § 11-46-11(1). The Mississippi Supreme Court requires strict compliance to the 90-day notice requirement. South Reg'l Med. Ctr. v. Guffy, 930 So. 2d 1252, 1258-59 (Miss. 2006); Univ. of Miss. Med. Ctr. v. Easterling, 928 So. 2d 815 (Miss. 2006). In both Guffy and Easterling, the Mississippi Supreme Court dismissed the plaintiff's claims for failure to comply strictly with the 90-day notice requirement.

In this case, Plaintiff does not dispute the fact that he failed to comply with the 90-day notice requirement. Instead, Plaintiff argues that he does not have to comply with such requirements. Plaintiff's sole reasoning for this proposition is that the Supreme Court has held that exhaustion of state remedies "is not a prerequisite to an action under Section 1983." Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982). The Court does not disagree with Plaintiff's reading of Patsy; however, Patsy is not applicable to Plaintiff's claim. Plaintiff brings his malicious prosecution claim under Mississippi state law – not under Section 1983. As noted, under Mississippi law, the 90-day notice requirement is a mandatory substantive requirement. See e.g., Arthur v. Tunica Cnty., 31 So. 3d 653 (Miss. Ct. App. 2010); Bunton v. King, 995 So. 2d 694, 696 (Miss. 2008).[5]

Defendants also contend that, even if Plaintiff had complied with the MTCA, under Mississippi Code Section 11-46-9(1)(c), they are entitled to immunity. That Code Section provides:

---

[5] The Mississippi Supreme Court distinguished Bunton v. King in 2009, holding that a complaint that is wanting of proper pre-suit notice should still serve to toll the statue of limitations until there is a ruling from the trial court. Price v. Clark, 21 So. 3d 509, 522 (Miss. 2009). Also in 2009, the Mississippi Supreme Court made clear that the notice requirements in the MTCA are substantive, and not jurisdictional; thus, they are subject to waiver. See generally Stuart v. Univ. of Miss. Med. Ctr., 21 So. 3d 544 (Miss. 2009). However, those cases did not alter the duty to comply with the ninety-day-notice requirement, and, here, there is no assertion that Defendants waived such a requirement.

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

MISS. CODE ANN. § 11-46-9(1)(c).

Plaintiff does not aver that Defendants actions in this case were unrelated to their official actions or duties; rather, he asserts that Defendants acted in reckless disregard of his rights. Specifically, Plaintiff alleges that reckless disregard is present because: (1) Plaintiff denies that illegal gambling was taking place; (2) Plaintiff was joking when he told law enforcement's confidential informant that there was a ten dollar buy-in; (3) Plaintiff was not sitting at the alleged poker table or holding cards when Defendants entered Plaintiff's establishment; and (4) Plaintiff was charged with gambling, but the men sitting at the table were not.

Reckless disregard has been described by the Mississippi Supreme Court as "a higher standard than gross negligence" and embracing "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Collins v. Tallahatchie Cnty., 876 So. 2d 284, 287 (Miss. 2004); Turner v. City of Ruleville, 735 So. 2d 226, 230 (Miss. 1999).

The Court is not persuaded by Plaintiff's conclusory arguments that Defendants' conduct was willful or wanton. Defendants testified that they received complaints that Plaintiff was running an illegal poker game. More importantly, Plaintiff admits that he told the confidential informant that he did indeed run a weekly poker tournament and that the buy-in was ten dollars. The fact that Plaintiff *now* asserts that he was not serious and that he would not have taken any of the informant's money is insufficient to show reckless disregard. Further, there is no allegation that the Yalobusha County Sheriff's Department did not utilize the proper procedures

in regards to their use of a confidential informant or their use of audio and video surveillance. The record as a whole as well as Defendants' testimony and Plaintiff's lack of evidence connote an absence of reckless disregard.

Alternatively, Defendants further argue that the record is void of evidence to support a claim for malicious prosecution. In Mississippi, the elements of malicious prosecution are: "(1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution." Robinson v. Hill City Oil Co., Inc., 2 So.3d 661, 665 (Miss. Ct. App. 2008) (quoting McClinton v. Delta Pride Catfish, Inc., 792 So. 2d 968, 973 (Miss. 2001)). The failure to prove any one of these elements by a preponderance of the evidence is fatal to the claim. Croft v. Grand Casino Tunica, Inc., 910 So. 2d 66, 72 (Miss. Ct. App. 2005). Defendants contend that there is no showing of malice, and that probable cause existed for Plaintiff's illegal gambling charge.

The Court's probable cause analysis "only requires that we find a basis for an officer to believe to a 'fair probability' that a violation occurred." Piazza v. Mayne, 217 F.3d 239, 246 (5th Cir. 2000). In addition, in our analysis of a claim of malice, we focus "on the objective of the defendant who instituted the criminal proceedings." McClinton, 792 So. 2d at 974. "The malice required for malicious prosecution occurs when the primary purpose of prosecuting is one other than 'bringing an offender to justice.'" Coleman v. Smith, 914 So. 2d 807, 811-12 (Miss. Ct. App. 2005) (quoting Strong v. Nicholson, 580 So. 2d 1288, 1293 (Miss. 1991)). "Unfounded suspicion and conjecture are not proper bases for finding probable cause." Benjamin v. Hooper Elec. Supply Co., Inc., 568 So. 2d 1182, 1190 (Miss. 1990).

As noted above, Plaintiff admitted that he told the confidential informant that there was an unlawful weekly poker tournament occurring at his establishment. This admission, coupled with Sheriff Humphreys's testimony about complaints concerning Plaintiff's restaurant, the surveillance conducted by law enforcement, and Camfield's testimony regarding the night Plaintiff was charged provide sufficient evidence of probable cause.[6] Likewise, Plaintiff's claim of malice based on the fact that he was charged with permitting gambling in his establishment, yet those playing cards were not, is insufficient to show a malicious intent, especially given Camfield's testimony that "the course of investigation was to arrest on the gambling charge in the facility" and that because law enforcement would have to prove that each individual gambler knew it was illegal, "it was harder to arrest everyone that was participating versus the sponsor of the game."

Since the Court finds Plaintiff's evidence insufficient to prove a claim of malicious prosecution, Defendants, including Sims and Humphreys in their individual capacities, are entitled to summary judgment.

**B.    Abuse of Process**

---

[6] Plaintiff raises an issue regarding why his charges of gambling were dropped. Apparently, Camfield, who was the arresting officer, and the prosecutor failed to show up for Plaintiff's hearing. Plaintiff claims this inherently implies malice. Why the prosecutor did not show up is not evident from the record; however, the Court finds this fact to be immaterial. In regards to Camfield, the record shows that he was not present on Plaintiff's trial date because he was hospitalized in the intensive care unit in Oxford, Mississippi. Camfield testified that he had no notice of Plaintiff's hearing and that he was never served with a subpoena. Plaintiff, again claiming malice, asserts that an (unidentified) sheriff's deputy took "a cell phone picture" of Camfield's subpoena and sent it to him while he was hospitalized. Plaintiff is apparently claiming that this put Camfield on notice and that it sufficiently constitutes service of the subpoena. The Court finds that such an argument is not only flawed, but it also does not demonstrate malice.

Lastly, Plaintiff contends that Defendants "intentionally misused and abused the court process to further improper motives."  The Court's analysis above pertaining to Plaintiff's failure to comply with the 90-day notice requirement under the Mississippi Tort Claims Act is equally applicable to Plaintiff's abuse of process claim.

In addition, the Court also finds insufficient evidence to support a finding of abuse of process.  In Mississippi, a Plaintiff bringing an abuse of process claim must show: (1) that the party made an illegal use of the legal process; (2) the party had an ulterior motive for bringing the charge; and (3) that damages resulted from the perverted use of the legal process. McLain v. West Side Bone and Joint Ctr., 656 So. 2d 119, 123 (Miss. 1995).  The gravamen of abuse of process "is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."  Heck v. Humphrey, 512 U.S. 477, 486, n.5, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

In this case, Plaintiff asserts the exact same evidence for this cause of action as that which he asserted for his malicious prosecution claim.  Those facts and this Court's previous probable cause and malice analysis indicate that there was no abuse of process in this case.  See Croft v. Grand Casino Tunica, Inc., 910 So. 2d 66, 76 (Miss. Ct. App. 2005) (finding that the plaintiff's abuse of process claim failed due to the existence of probable cause).  Plaintiff has failed to show any ulterior motive or an illegal use of the legal process.  In fact, Plaintiff testified that the majority of his claims are based on his own "speculation."  Thus, Defendants, including those sued in their individual capacities, are entitled to summary judgment on Plaintiff's abuse of process claim.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment in its entirety.

So ordered on this, the __5th_ day of October, 2010.

**/s/  Sharion Aycock_____**
**UNITED STATES DISTRICT JUDGE**